Thank you. Good morning, your honors, and may it please the court. My name is Joshua Lipschutz, and I represent the plaintiffs in this matter. Remember to speak up in the microphone, because that's not a very good microphone, Mr. Lipschutz. Okay. Sure. Hopefully that's better. I'll get a little closer here. California's teachers' unions are empowered by state law. Well, counsel, before you get there, your clients are gone, aren't they? No, your honor. Actually, one of my clients is right here. Well, I mean, she's no longer a teacher. She's still employed by the same school district, but you're right. She's not currently a teacher, and the other two are teachers, but they're not teachers within the state of California. So why hasn't this case moved? Well, the case not – there's two reasons why the court should reach the state action question. One is – Well, that's a little bit of it. Why hasn't it moved? Right. And the first – I mean, you know, we always, in law school, how they say jurisdiction is the first thing that we look at, and do we have – you know, do we have people withstanding? Do we have a live controversy? What – Absolutely, your honor. And the first reason why the case should reach the merits is because the case is not moved. Defendants have not carried their heavy burden of establishing that there is no effective relief remaining for the court to provide, and that's a quote from the Oregon Advocacy Center decision from this court in 2003. Plaintiff's request in the complaint for such additional or different relief as the court may deem just or proper reasonably includes a claim for equitable restitution of the dues that my clients have already paid since the inception of this lawsuit. When this lawsuit started, just before the lawsuit started, my clients sent letters to their unions requesting that they be allowed to withhold the money for the political portion of the dues. But your general prayer argument is how do you square that position with our decision in seven words, LLC versus Network Solutions, where we held that the general prayer for relief does not support an 11th-hour damages claim. Well, the difference is that in seven words, the parties had expressly disavowed any claim for damages prior to that. They had said that damages would not satisfy them, and they did not want damages. And then they changed their minds when the – when the mootness issue arose. I would instead point this court to the Supreme Court's decision in Zobrest, Zobrest v. Catalina Foothills School District from 1993. In that case, the parents of a deaf student sued to require the school district to provide an interpreter. By the time the case had reached the Supreme Court, the student had already graduated. But the complaint included a request for, quote, such other and further relief as the court deems just and proper, same request that's in our complaint. And the Supreme Court held that was sufficient to accomplish a claim for restitution. The plaintiff had gotten nothing. They did not get the special education help that they needed. In this case, the plaintiffs got whatever the union had to offer them. No. Well, actually, I disagree with that. The plaintiff in Zobrest did get the help that he needed. He just paid for it himself. No, he got nothing from the school district. That's right. But in this case, the unions, the unions currently have the money that's at issue in this case. So they also gave the services, didn't they? Whether it was insurance or maternity leave or whatever kind of perks that they gave out were received by the people that paid their dues. Well, right. But not only at the expense of our plaintiffs having been forced to contribute their money to the political agenda of the unions. That's the issue in this case is whether you can be forced to spend your money on the union's political activities. But if you're the plaintiff's disassociation from the unions, how are they still subject to the coercive choice that is the grapplement of your complaint? I agree. They're not what I think, if I'm correct, they don't profess any concrete plans to move back to California and rejoin the union. That's Bain and Zebetsky. Or to go back to teaching and rejoin a union, which is Botka. And so I'm assuming Botka is the one that you're saying is here. Well, Your Honor, and ‑‑ But she can't be in the union now because she's taken a promotion. And ‑‑ You're correct. And I'm not here telling you that there's some continuing prospective relief that those plaintiffs have. What those plaintiffs have is an equitable restitution claim that fits within the same allegations and claims that they filed with the court. And if Your Honors do not accept that position, there is still a Rule 21 motion to join the Association of American Educators as another plaintiff in this case. We filed ‑‑ The AAE doesn't want equitable restitution. That's right. The AAE ‑‑ So the relief that you're asking, that AAE is asking for, is not symmetrical with that which your clients are asking for. Is that a requirement under Rule 21? No. The requirement under Rule 21 is that the party coming into the case doesn't seek anything that's outside of what the original plaintiffs were seeking. It's the same relief. The same relief. Right. So the declaratory and injunctive relief that AAE is seeking is the same as what our plaintiffs have been seeking all along, especially if this court holds ‑‑ How does the court overseek? Well, especially if this court holds that there's no equitable restitution claim in the case. Well, one thing is the injunctive relief, and the other thing is equitable restitution. Let's call it injunction and damages. Right? AAE doesn't seek damages. Your clients don't seek injunction anymore. Well, but they have throughout the life of this case. No. Well, they still seek the injunction. It's just that this Court may rule that the injunctive relief is moot. But they've sought injunctive relief all throughout the case. They did. But they can't now seek it because they don't have standing to seek it. But that's always true in a Rule 21 motion. In a Rule 21 motion, you're bringing in a party to cure a jurisdictional defect, so the original party no longer has any claim. Well, it's not clear either, though, that a Rule 21 joinder may be used to unmoot a case. Either two. I think that's a further ‑‑ the Second Circuit would disagree with you. And the Ninth Circuit, I think, held that a Rule 21 may be used to retroactively cure a jurisdictional defect, but not all jurisdictional defects are alike. And so I don't think ‑‑ and then AAE has to also satisfy the Rule 21 standard that because it seeks injunctive and declaratory relief, whereas the plaintiffs ‑‑ the original plaintiffs now profess to seek monetary damages, and its reasons to seek relief are arguably misaligned with those of the original plaintiffs. And also, then you have to overcome the hurdle that at this late stage in the proceedings, would there be prejudice to the unions? There's a lot in that question that I disagree with. Yeah, well, there's a lot. But AAE could file its own lawsuit, no doubt about it. That's exactly right. But can AAE unmoot the plaintiffs? Well, the answer is yes. This Court has already held that. In the California Credit Union League case, this Court said in 1999, quote, appellate courts may join a party as a plaintiff to cure a jurisdictional defect when the joiner will promote judicial economy and not prejudice the defendant. That's the situation here. This is not late stage. Your Honor used the phrase late stage in the proceedings. This is far from late stage. We're at the pleading stage. This case was thrown out on a motion to dismiss on state action grounds. Those state action grounds are fully briefed before this Court and ready for a decision. We could bring our own lawsuit. We could go back to the district court, file a new lawsuit with AAE as the plaintiff. We've submitted to this Court the complaint that we would use. It's identical to the complaint that we already have. We would get the very same ruling from the very same judge, and we'd be back here waiting another year and a half for a hearing on the same issue. I know that, but we take jurisdictions seriously. Oh, and as do I, Your Honor. My point is simply that the Ninth Circuit has already said that this is acceptable. And the Supreme Court, in both Mulaney and Newman-Green, and Newman-Green, by the way, was only in 1989. It wasn't that long ago, has said the same thing. The Supreme Court has said that you can do this. So I don't think this is, you know, everybody takes jurisdiction very seriously, but this is already a procedure that has been blessed by the U.S. Supreme Court. If you, all right. And if I could just, one more point on AAE. It's true that we're saying that our original plaintiffs are seeking restitution, but the point is that AAE is only necessary if the Court rejects that. Right? So if the Court says, yes, your original plaintiffs are seeking restitution, we don't need AAE because we have a live case or controversy with our original plaintiffs. If the Court says that there is no restitution in the original complaint, then the claims for relief are exactly the same. Both AAE and the original plaintiffs at that point are only seeking declaratory and injunctive relief. But the problem with that is the original plaintiffs no longer have standing because they no longer can be affected by the injunction. That's true, but again, that's always true with a Rule 21 motion when you're bringing in a party to cure mootness. Okay. Let me just highlight a couple of other AAE problemas. Okay. AAE's members are not subject to the union's fee supporting their political activities. And so a favorable decision would not change that fact. So how does AAE have standing under the first prong of Hunt? And then also you argue that some of AAE's members would like to join the unions and would do so absent union's alleged unconstitutional activities, but your proposed amended complaint does not identify any particular member of AAE who would like to join the union. So why don't you fail the requirement for Article III standing that you show a particularized injury? So what we are challenging in this case is teachers in California who are put to the choice, the unconstitutional choice. I know what you're challenging, but those three people that were put to the choice are gone. So now you want to put AAE. Right. But your question, Your Honor, if I understood it, went to why AAE is an appropriate plaintiff. And let me explain why that's so. What we're arguing in this case is that teachers in California are put to an unconstitutional choice. Either they have to pay for the union's political dues in order to get the benefits that the unions have maneuvered to make sure they're available only to people who have paid the dues, or they can withhold the dues, which they're entitled to do under ABUD and Supreme Court jurisprudence, First Amendment jurisprudence. But if they do that, they're punished because they lose all those benefits. For standing purposes, it shouldn't matter which side of that coin you're on. If you're a teacher who has agreed to submit to the whims of the union and pay their political dues in order to get those benefits, you are still coerced into doing that. If you're someone who's decided, you know what, I'm just not going to do it. I want those benefits, but it's not worth it to me to pay the money and contribute to the union's political agenda in order to get them, you've still faced the same Hobbesian choice. You've still faced the same coercion. You've just chosen to come out on the other side of it. Both sides can still challenge the choice. If we get to the merits, because the time's going, and we might have to take a little extra time here. So if we get to the merits, if the Supreme Court overrules ABUD in Janus, the pending matter, I'm just shortening them because I know you know all those cases, and invalidates public sector agency shops, doesn't that remove your basis for alleging state action here? It does not, Your Honor, for the following reason. The Janus case might, and we'll see, invalidate the agency shop arrangement, meaning that teachers who decide not to join the unions won't have to pay anything at all, not even the collective bargaining portion of the fees. That won't necessarily change the union's status as exclusive bargaining representative for the membership, for the teachers. And what we've seen is that, and this is in the record, this is in the complaint, we've seen that the union's plan, in the event that that happens, is to actually step up the pressure on teachers, make it even harder for teachers to make the decision not to join the union. More pressure, more coercion. If we get to the merits, should we wait for Janus? I think Your Honors could wait for Janus, but I think on the state action question you really don't need to. There's no question that there's state action in Janus. State action hasn't even come up. Both parties agree that there's state action. And frankly, state action should never have come up in this case either. Every Supreme Court case dealing with a fact pattern similar to ours, every one of them has found that there is state action. These are union actions. This is a union that has been designated the exclusive bargaining representative for teachers in California, public sector union. They are taking actions that make it harder for teachers to avoid the political dues that they charge. In every other context, whether it's Abood, Hudson, in Hudson, the court found that the burden on dissenting teachers was too high, where the union's internal rules, that case was exclusively about union internal rules, and they said that the internal rules of the union made it too difficult for teachers to opt out of the political activities of the union. And the Supreme Court in Hudson explained that, quote, both the government and the union, end quote, share the responsibility to protect dissenting teachers' rights. That's Hudson 475 at 307, note 20. Both the government and the union share the responsibility to protect the rights of nonmembers. That is the opposite of what's happening here. The union's- Let me ask you about Davenport, though. Okay, so in Davenport, the Supreme Court explained that the union remains as free as any other entity to participate in the electoral process with all available funds other than the state-coerced agency fees lacking affirmative permission. But you argue that even the union's own internal fee for political activities is state-coerced. So how do you reconcile your position with Davenport's statement that the unions may freely use funds to engage in politics? In other words, under your theory, what funds are left to be freely used if even members' only fees are state-coerced? First of all, the unions are free to engage in whatever expressive activity they'd like. And clients are members. Well, again, they're members because of the coercion, right? They felt they were forced to join in order to get the benefits, paid maternity leave being chief among them, frankly. Why is paid maternity leave in California tied to a teacher's willingness to pay for a union's political activities? There's no rational correlation between those things. The reason is because the unions have decided and come up with a strategy, together with the state of California, that coerces teachers into joining the unions. And they even tout it in their literature. They say, they warn teachers, you may be stuck without paid maternity leave if you don't pay up and join our union and pay our political dues. It's coercion. And that's the state action. It's joint action between the state and the unions. There's no reason the unions can't participate in whatever expressive activity they'd like with the political dues from teachers who actually want to pay that money. There are lots of teachers out there, I'm sure the unions will tell you, that happily give money to the union's political activities. There are some teachers, however, that do not want to give money to the union's political activities. And the Supreme Court in Abood made very clear that the union can only engage in expressive activity with funds that come from teachers who are actually willing to give that money. But Abood concerns the rights of nonmembers of a union not to support. Your clients are members, so that they've chosen for you claim coerce, but they've chosen, they are members, to join the unions. So why does that distinction not stand Abood apart from the matter before us? I don't think they're not exactly we have members and nonmembers. It's actually incorrect. Abood had both members and nonmembers. Abood was members of the union and nonmembers of the union suing because they were being coerced into paying the political portion of the dues. It's the same case. The only difference between our case and Abood is that in Abood, if you didn't contribute to the political dues of the union, you lost your job. Here you don't lose your job, but you lose your maternity leave, you lose your ability to vote on the collective bargaining agreement, you lose your ability to participate in the collective bargaining process, and you lose your ability to sit on district policymaking committees that determine the school curriculum. And you can't buy disability and life insurance. I'm sorry? And you can't buy disability and life insurance. And you can't buy the disability and life insurance that the union is offering. You have to go out and spend, according to the union's own materials, thousands of dollars more to get those benefits. Those benefits could be negotiated by the union to be paid directly by the employer. That's exactly right. In fact, if you are a non-teacher in a California school, you get paid maternity leave. Isn't that amazing? If you're not a teacher, you get paid maternity leave. But somehow the unions are not powerful enough to negotiate on behalf of teachers to get paid maternity leave. It's not that they're not powerful enough. It's not that they can't do it. It's that they purposely choose not to let teachers get paid maternity leave from their employers so that they can use it as a way to convince teachers to join their ranks. That is what we're alleging. It's what we plan to prove. And we think we should have the right to prove that, because it's the same state action that was involved in Abood and in Hudson and in Harris v. Quinn and in Knox and in every other Supreme Court case that has addressed this context. Okay. You're over, but I'm going to give you rebuttal time, and I'm going to make sure before we go on, just because there are a lot of issues here. Do either of my colleagues want to ask questions at this point, or would you rather wait for rebuttal? Wait for rebuttal. Okay. So I'll give you adequate time on rebuttal. Thank you very much. I appreciate that. Thank you. Good morning. Good morning, Your Honor. Pardon me. Good morning, Your Honors, and may it please the Court. My name is Eric Harrington. I'm here on behalf of the ---- Good outdoor voice. Good outdoor voice on the last one. So we're ending on a high note. Oh, good, good, good.   I want to begin, first of all, by thanking you for your time. I want to begin, of course, with the question about mootness.  About mootness. And as Judge Callahan pointed out, that seven words controls here. And just as the plaintiffs in seven words did, the plaintiffs here actually affirmatively waived any claim to restitution. In their motion to join AAE, they told this Court that they were seeking only declaratory relief and injunctive relief. They expressly did not say they were seeking restitution. And there's a very, as Judge Bea pointed out, there's a very good tactical reason for why they waived any potential damages. Could you give me a citation to the record where that substantiates the statement you just made, that the plaintiffs affirmatively waived restitution rights in their, I guess, in the support of AAE's motion. Yes, so this is on the Ninth Circuit docket 43, page 3. And actually, while I'm here, I will just read it to the Court so that we're all on the same page. And this is the motion to intervene. This is the motion to join AAE as a new plaintiff. They say, first, AAE seeks the same relief as the plaintiffs. A judgment declaring California's agency shop and collective bargaining laws unconstitutional insofar as they allow the unions to set terms and conditions for membership benefits. Two, an injunction barring the superintendents from deducting from teachers' paychecks the political part of dues. And three, an injunction prohibiting the unions from denying employment-related benefits, they call them, union member benefits, to those who do not wish to contribute for, to the political and expressive activities of the unions. Full stop. Where? Full stop. Full stop. Where is the statement? Please keep reading and tell me where is the statement that say we reject any claim for restitution? I want to be clear. I don't say that. No, it isn't fair. They're asking for the same relief as AAE is, but it doesn't say that's the only, that's the exclusive request for relief, does it? I understand that. And that, well, two points, Your Honor. First, that is the exact circumstance that was in seven words. There wasn't a big shiny sign that said we are disclaiming all monetary damages. They just told the Court what they were seeking affirmatively. So that's the first point. That's seven words. The second point — And then you're saying the seven words says that when you say I'm seeking the same relief as the joining plaintiffs, that means that through some use of the word, of the statutory canon expressio unias, if I seek the same relief, I can seek no other relief? The word same under its plain meaning, we didn't get supplemental briefing on this, but its plain meaning means identical. So if you and I were to go to a restaurant and I were to say I'd like a cheeseburger and an iced tea, and you said I'd like the same, and the waiter said I'd like you a cheeseburger and iced tea, and you said where's my cherry pie? That means I can't order cherry pie? If you say that you're ordering cherry pie, you're free to. But if you tell the waiter I just want the same. And there's no decision, there's no Rule 21 jointer decision where a court has allowed a new plaintiff into a case that's seeking different relief. And, in fact, this court — How about additional relief instead of different? In fact, in this court in Spangler, then Judge Kennedy had a similar circumstance where the Justice Department was involved in a desegregation suit and parents wanted to be added to the case and they had different theories and different types of relief, and then Judge Kennedy said the proper course there is to move to intervene in the district court or to file your own lawsuit. Well, I think if I were to make the plaintiff's argument here as to the same, the plaintiffs argue that their members are put to the same unconstitutional choice. Aren't A.A.E. members, as fellow public school teachers, put to the same unconstitutional choice and therefore suffer the same injury as plaintiffs for the purpose of determining A.A.E.'s organizational standing? Well, the point now is that they cannot be seeking the same relief because the only claim — the only potential claim that the teacher plaintiffs have left is a restitution claim. And the only potential claim A.A.E. has, as the Court has already pointed out, they can't — they don't have standing for a monetary damages claim. And if I could just circle back, let me just give you the language of seven words. In seven words, the Court concluded that the party had waived any damages claim and read its general prayer for relief to not include a damages claim because, quote, it was made after two years of litigation. We're over two years here. After various representations that they were seeking only declaratory and injunctive relief. Here we have three complaints. We have two motions of dismissal in the district court. We have six filings that the plaintiffs have made in this court. It's only in the sixth filing. And you can scour the complaint in the lower court briefing. There's no discussion of damages or any monetary relief. And that distinguishes it from Zobrist. Where in Zobrist, in that record, there was the amount that the restitution cost for the interpreter, and it was in the record. The Supreme Court cited to it. There's nothing like that here. And so to finish the point on seven words, it was only after a motion to dismiss at the 11th hour. That is exactly the circumstance we find ourselves in here. And our motion to dismiss for mootness, this is after they had already filed a letter notifying the court that at least two of the plaintiffs were moot. This was already after they filed a motion to join. Only then do we find a restitution claim. And if they – if Your Honor is correct that they were kind of holding a restitution claim, they should have been frank with the court in the motion to join so that the court would know, well, they're seeking some of the same relief, but not all of the same relief. Kagan. Well, so how are you damaged? How are we damaged? If they were allowed to substitute. Yeah. I think the way to think about this is if you're – is the harm to the unions and the tactical advantage that AAE would gain by being added to the case now. And remember, the Supreme Court has said only a tactical advantage. Well, they can sue you anyway. AAE can sue you anyway. So the fact that both of you won't be back many times throughout the years, I have no doubts. I understand that, Your Honor. And let me just give you the practical example. If you're AAE and you want to sue the unions for this type of a claim, you have a whole host of problems, standing being one, which the Court already talked about, a constitutional theory that it all makes sense under coercion when, definitionally, you're not a member of the union and AAE offers member benefits that it says are comparable or superior to the unions. So there's a whole bunch of problems, including State action. Now, if you're AAE and you can just get a ticket to this Court on this case, you get one of the core questions in the case answered before the threshold questions, standing, other 12b-6 issues. And that puts us at a disadvantage, and it gives them an advantage. I'm skeptical whether they would even file in this Court, given all the problems in their case. Well, standing can be brought up at any time. If AAE doesn't have standing, you can bring that up right now. I understand that. But as a general matter, standing shouldn't be ---- the plaintiffs have pointed to no case where a court has added a party on appeal where there are questions of standing. In the Pledge of Allegiance case, the Supreme Court brought up standing in the Supreme Court for the first time. In the Mulaney case, Your Honor? Yes. And recall in Mulaney, standing was not ---- it was not concluded that they lacked standing. There was just a question of standing. So the Court added the union member just to avoid the problem altogether. He was talking the Pledge of Allegiance case that he said at the U.S. Supreme Court that they did that. Yes, of course. You can raise standing at any time. But as a general matter, that will be, at least in the first cut of that, will get handled in the district court. All right. So on the mootness issue, in California Credit Union League v. City of Anaheim, we held that we could grant a motion to join to retroactively cure a jurisdictional defect. Assuming we find that this case is moot, there is such a jurisdictional defect. Assuming AAE meets the standard for Rule 21 joinder, I realize that's ---- and also has standing, why can't we join AAE to cure that defect? Yeah. I think California Credit Union is distinguishable. And, Your Honor, I think has already put your finger on a core difference here. And in California Credit Union, the Supreme Court concluded that that type of claim could not be brought without the United States involved in the case. That was not an Article III jurisdictional problem like we have here. And the same thing goes for the diversity jurisdiction cases in, say, Newman Green. It is one thing to dismiss a nondiverse, dispensable party. It is different to revive a suit where there is no jurisdiction at all. That's what they did in Mulaney with the Alaska fishermen, right? Right. But as I was saying earlier, in Mulaney, the Court did not conclude that the union lacked standing. There was just some question of standing. Therefore, they just added the union member just to avoid the problem altogether. The Court did not conclude that the case was moot. And, in fact, the plaintiffs cite no case where any appellate court has ever added a new party on appeal to resurrect an already moot case. And, in fact, the Second Circuit has specifically held that adding parties on appeal to resurrect a moot case is an inappropriate use of that authority. So let's talk a little bit about the merits just because we're here. And so we have to address that threshold issue. But let's assume that we get to the merits. Should we stay this case pending the outcome of Janus if we get to the merits? So I don't think you need to stay the case pending the decision in Janus for three reasons. One, your question doesn't allow me to answer, which is the case is already moot, so you should dismiss it on that. But even if the Court concludes the case isn't moot and wants to address the merits of State action, Janus, I think my opposing counsel and I agree on something, Janus does not address State action. In that case, Illinois, what's being challenged is Illinois' law that requires that you pay the unions a fee as a condition of public employment. That's plainly State action. It's never been contended otherwise. So there is no State action element at issue in Janus. So the Court is not going to say much that's relevant to this case. And then number two, and again I think Judge Callahan has already pointed out this, in all of the fee cases, or many of the fee cases, the Supreme Court has explicitly said it is unconstitutional, at least there's constitutional problems with compelling employees to pay a fee to the unions as a condition of public employment. But the Court says in several decisions, make no mistake, we are not saying that unions cannot engage in politics with voluntary union dues. The majority in Abood said that. The dissents in these cases have said that. But the problem is that Mr. Lipschitz argues that these are not voluntary union dues. The union makes a conscious decision not to bargain with the employers for certain benefits and then has a captive market using its State-given monopoly power to coerce people to join the union to get those benefits. Why is it not State action? A few points. So first, the State action doctrine holds that you look at the State's involvement in the specific decision. The State decides by statute that your union is the exclusive bargaining agent. Therefore, it closes it with antitrust immunity so it can act on its economic power through collective bargaining to coerce the people to join it. I understand the argument. But as Judge Alito said in the Third Circuit, the naked fact that the union has exclusive representation responsibilities does not convert every action it makes into State action. And the Seventh Circuit has likewise held. Otherwise, think about every decision that becomes a State action problem, expelling a member, not pursuing a grievance. These are all cases that courts have already decided. Those involve the union's role as an exclusive representative that's granted authority by the State, but that's not State action because the State is not involved in the specific decision. And I see I'm running short on time, so I just want to be crystal clear with the Court on this compulsion theory. My opponent said something that is just not true. He said that in California, to get maternity leave benefits, you have to join our unions. That is not true. Under California law, every teacher pursuant to the Education Code gets ten sick days a year, and they never expire, and you can carry them over and you can even take them to new districts. So if you work five years, you have six weeks off.  So wait. You get how much time? Ten days a year. For? For sick leave. And I'm not done yet. There's more. Okay. Because I'm going to say if you had a cesarean, you know, drag me out of bed and pull me back in. I have more. If you exhaust your sick leave, you get 12 weeks of differential pay, so that's after you exhaust it, and I get 12 weeks of child care leave. This is all in the Education Code. And my opposing counsel said the union should bargain for this stuff. Well, we did one better. We went to the legislature and got this put in the Education Code so it can't be taken away at the bargaining table, using political money to do that. So you get 12 weeks of child care leave at differential pay, and you have disability benefits. This is unique only to California teachers. Other public employees don't have this. You get five months of disability leave. The union's insurance plan is not really in the record. They kind of they want to characterize it. Okay, but it's still a little bit circular in the sense, though, without the agency shop statutes, individual teachers or competing organizations could negotiate for employment benefits, including life and disability. They are prohibited from doing so under current law. So why isn't that fact sufficient to find the union's decision to provide only their members with such benefits state action? Because the state action doctrine holds that you look at the state's involvement. And Judge Wilson got this completely right. The state does not have any say whatsoever in whether we offer benefits, the contours of those benefits. And even since this litigation has been going on, the details of these benefit plans have changed. Many of them are contracted out to private insurance companies, which, as anyone knows, they change the terms of these things. And I assure you there hasn't been phone calls with the state in how to craft these benefits. The state is not involved at all in the decision to offer them, the particulars of them whatsoever. Let me ask you this. I know we're going over, but we're going to go over a little bit on this. And so I want to make sure, since you don't have a rebuttal time, that we get through this. If I'm ‑‑ hypothetically, if we were to find state action in the union's conditioning membership on paying a political fee, would we necessarily be compelled to conclude that the plaintiff's First Amendment rights are impermissibly infringed? No. I think that's definitely ‑‑ no. Because the only ‑‑ we briefed several reasons why this didn't state a First Amendment claim. Judge Wilson reached only the state action question. And we briefed only the state action question in this court. I think it would be appropriate to allow the district court and allow us to take a run at all the different reasons why there's no First Amendment claim here. And one of the core ones that's very important is, as the Fourth Circuit said in Kidwell, the relief that the plaintiffs seek here, a court imposed alterations to the union's internal membership rules, would violate the union's own First Amendment associational rights. At the very least, we can posit that there would be a serious associational right problem with that relief. So I don't think this ‑‑ it wouldn't be appropriate without additional briefing for the court to answer questions beyond state action here. Okay. Well, just if you ‑‑ we've asked you a lot of questions, and you're not going to get rebuttal. If you want ‑‑ if you need a couple of minutes right now to cover something that you want to, I'll give it to you. If I could, I want to address a couple more things that my opponent mentioned. The first is he said that in the Supreme Court case Hudson, that there was state action there, therefore there's state action here. Recall that the Hudson regime is all about the post‑Abood tinkering with the agency fee regime, which we all acknowledge when the government conditions public employment on paying a fee to the union, that is state action. So the Hudson issue and all that notice stuff, that's about the constitutional regulation that makes that compelled fee constitutional. So that's just a component of the state action, and the union is a joint actor when it's compelling fees. So I think Hudson's easily distinguishable. I want to touch on the other two benefits that they mentioned. My opponent said that you can't participate in collective bargaining. You have no say in your school district unless you join the unions. Also not true. Under clear California law, there are many avenues for nonmembers to participate in input with their employers. Are those meaningful, though, under the circumstances? Well, I ‑‑ I mean, just because you let somebody get up and talk at an open meeting doesn't really give them any kind of leverage. Well, let me give you a few that are meaningful. Number one, California state court decisions have held that unions must take meaningful input from nonmembers. If we don't take meaningful input ‑‑ What does that mean? If we don't take meaningful input or if we discriminate against nonmembers, we have violated the duty of fair participation. No, what does meaningful input mean? I think it means what we do, which is we, you know, you can do things like surveys, you do open meetings that involve nonmembers, you allow them to have input. Let's remember also that the bargaining is actually done by localized teachers. These are their coworkers. They can create forms and due to gain input from nonmembers. So there's lots of places for meaningful input at the union side and at the school district side. Well, if it just means listening to somebody speak at a public meeting, is that meaningful? Well, I assure you ‑‑ Or you don't say shut up and sit down. I assure you, I don't know if you participate in labor management committees, but sometimes the labor management committees are only just listening. And thank you very much. So one of the things that they say that nonmembers are deprived of is participating in labor management committees. Actually, not true either. As Judge Wilson pointed out, nonmembers can participate by the plain language of the collective bargaining agreements and even then, as Your Honor understands very well, sometimes that's just listening. But the core state law obligation is that we don't discriminate against nonmembers. So if there was this kind of discrimination, this imagined bargaining and scheme here that the plaintiffs have alleged, they could bring an unfair labor practice charge under California labor law and that's the appropriate place for this. It's not to constitutionalize private decisions of private organizations, particularly one that's so well regulated by California labor law. And then the last point I want to mention is just the dismissal proceeding. They say that we could use our power at the bargaining table, I wish it were as much as my opponent suggests, to bargain for legal services protections for our members, for nonmembers. Remember, under California public employment law, the dismissal proceeding is not subject to collective bargaining. It's specifically something that we can't bargain over. It's all statutory. And so what they're saying is that we could get school districts to fund the lawyers that sue the school district in dismissal proceedings. What's wrong with that? It's possible, but there are a whole host of conflict of interest problems. And the reason why we don't do it is because it's – and we also control it. It's easier just to have members fund this and then they don't have to leave this to the vagaries of the bargaining table. They can just have that right. It's also important to remember, nonmembers are not left out in the cold. They have a right to this process. They have a right to an attorney. And if they prevail, they even get attorney's fees. So this coercive scheme that they say is so hard on the nonmembers who don't join the union, I think if we look at our economy, you know, a lot of these benefits that nonmembers have without even joining unions are much more than most people. Okay. I think we have your arguments in mind then. Thank you. I thank the Court. Thank you. All right, Mr. Lipchitz, I'll give you five minutes. Thank you, Your Honor. I appreciate that. The argument that we just heard from opposing counsel is how coercive is it? And I'd love to be having that argument. That's the argument – he's arguing that the regime is not coercive, that it's in fact not coercive. That's the argument we're trying to have. We would like to go back to the district court and have that debate with my opposing counsel and with the other side about how coercive this regime is. We've alleged, and remember we're at the pleading stage, that this regime is incredibly coercive and that the unions have infringed on the teachers' First Amendment rights because it coerces them into contributing to the union's political activities. And we can argue the merits later. Right now we're at state action and we'd like to get to that point. So let me tick off a couple of things that my opponent said. First of all, in the seven words case, let me read you the language from the opinion where the court explained that a claim for damages was disavowed. At page 1096-1098 of that opinion, the court said that the plaintiff in seven words had previously, quote, argued that the case would become moot if the domain names were registered to third parties. That's what actually happened. And, quote, a damage award against defendant would not be an adequate remedy. That's the express disavowal. You don't have anything like that in this case. The question in this case is simply whether the complaints can be reasonably read to include an equitable claim for restitution. Ultimately, the question as to whether to bring AAE in as a plaintiff in this case comes down to prejudice. How would the case have been litigated differently to this point if AAE had been a member from the beginning? And the answer is it would not have been litigated differently at all. Wasn't there an issue of AAE's standing? There may be a contestable issue of AAE's standing, but the other side raised standing questions even with respect to our existing plaintiffs. They were challenging the standing of our existing plaintiffs. The district court didn't reach those issues. The district court went straight to state action. So there's no reason to think that the district court would have gone to the standing question for AAE when it didn't go to standing for the other plaintiffs. We'd have the same opinion. Would you please address Mr. Harrington's Parade of Horribles argument that if we hold that there's state action here, there'll be a state action in every disciplinary event? Yeah, it's simply not the case. What we are arguing here is a systematic discrimination against nonmembers using the state's collective bargaining powers, the state's exclusive bargaining authority. The California Government Code, Section 3543.2A1, gives unions exclusive bargaining authority over wages, hours of employment, and other terms and conditions of employment, and it then goes on to explain what is included within the union's exclusive bargaining authority. All of the types of benefits that we are talking about in this case  and our argument is exactly the same as the argument that was made in the Harris v. Quinn case. The Supreme Court in Harris v. Quinn said, held, that agency shop unions satisfy the First Amendment only because the unions are required to, quote, promote and protect the interests of nonmembers. And then they go on to say, and this is a quote, page 2637 of the opinion, this means that the union cannot, for example, negotiate particularly high-wage increases for its members in exchange for accepting low increases for others. Well, that's effectively what the unions are doing here. 1983 case? Yes, as far as I remember, that was a 1983 case. I'll have to check on that. But it was a decision from 2014 in which the differential negotiation between how the unions were treating members and the unions were treating nonmembers. That's this case. This case, the unions are negotiating differently on behalf of members versus nonmembers. I can see you bringing your action as an unfair labor practice, but as a Section 1983 damage claim, it's a little bit more difficult for me to comprehend. Well, it certainly is an unfair labor practice, and we could bring an unfair labor practice action on this point, but it's also a First Amendment violation. The reason it's a First Amendment violation is because, remember, agency shops, by definition, infringe on First Amendment rights. The Court has said that over and over again in Abood and in many other cases. You are necessarily infringing on nonmembers' First Amendment rights because you're forcing them to pay the collective bargaining fee to the unions. Now, the Supreme Court has said, at least until now— Why is that a First Amendment right if the agency fee is only for collective bargaining and not for political contributions? Well, because the Supreme Court has said that you are forcing nonmembers to give money, and the giving of money is at least—it may not be an infringement of First Amendment rights, but it implicates First Amendment rights. Why? I mean, you're just paying for somebody who's bargaining for you. Isn't that Abood to say if all you pay for is the collective bargaining portion, the nonchargeable as opposed to the chargeable amount, why is that a First Amendment right? Because, remember, those are public sector unions, so collective bargaining in the public sector context is negotiating with the government for— Isn't that precisely what the Janus case is going to decide? Oh, yes, and I'm not saying that that's a basis for our case. What I'm saying is that the reason that these unfair labor practices are also First Amendment violations is that the entire agency shop regime is justified under the First Amendment only because the unions have a corresponding duty not to discriminate against nonmembers. It's a First Amendment responsibility that they have not to discriminate against nonmembers. So when the unions use their exclusive bargaining powers to negotiate differently on behalf of members and nonmembers, where the only difference between members and nonmembers is whether you're paying for their political activities. Remember, there's no other difference here between a union member and a union nonmember. The only difference is that some teachers have decided they're willing to pay for the union's political activities. Some teachers are refusing to do so. That's the difference. And so if you are purposely not negotiating benefits on behalf of people who did not contribute to your political agenda and then offering those same benefits only to people that did, that becomes a First Amendment violation precisely because it's coercive of the teacher's speech. And Justice Alito, we heard what Judge Alito said when he was on the Third Circuit, but Justice Alito in 2012 in the Knox case said that where public sector agency shops are concerned, the question is whether the method being used to, quote, extract fees from unwilling contributors is carefully tailored to minimize the infringement of free speech rights. And that's what this case is about. Is the system that the unions and the state have set up carefully tailored to minimize the infringement of free speech rights of teachers? No, it is quite the opposite. It is coercive of the teachers, and it therefore infringes on their First Amendment rights, just like the procedures that were at issue in Hudson, just like the procedures that were at issue in the Harris v. Quinn case as well. Okay, well, I've allowed you to go even beyond the overage, which unless my panel has any additional questions, I'm going to call the ball here. Any additional questions? Thank you very much. Thank you both, besides for your argument. You both were very well prepared and did a good job. And this matter will stand submitted.
judges: Kelly, Callahan, Bea